## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | |
|---|---|
| **HENRY OSOWIECKI,** | **Case No. _____** |
| **Plaintiff,** | **Hon.** |
| | **COMPLAINT** |
| **v.** | |
| **OCWEN LOAN SERVICING, LLC,** | |
| **Defendant.** | |

## COMPLAINT & JURY DEMAND

Plaintiff, HENRY OSOWIECKI, by and through his undersigned attorneys, brings this action against Defendant and alleges:

### INTRODUCTION

1.     Plaintiff, HENRY OSOWIECKI (hereinafter, "Plaintiff" or "OSOWIECKI") brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant, OCWEN LOAN SERVICING, LLC, (hereinafter, "Defendant" or "OCWEN") in negligently and/or intentionally and repeatedly contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff also brings this action for damages, against Defendant OCWEN, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

2.      Plaintiff also brings this action for damages in pendant claims against Defendant for violating the Maryland Telephone Consumer Protection Act, §14-3201 et seq. of the Commercial Law Article ("MDTCPA").

3.      Plaintiff also brings this action for damages in pendant claims against Defendant for violating the Maryland Consumer Debt Collection Act, MD. ANN. CODE, COM. LAW § 14-201 et seq ("MCDCA").

4.      Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

5.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Serves., LLC*, 132 S. Ct. 740, 744 (2012).

6.      In enacting the TCPA, Congress intended to give consumers a choice as to how creditors, debt collectors and telemarketers may call them, and made specific findings that

> "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7.      The TCPA gives rulemaking authority to the Federal Communications Commission (FCC) to prescribe regulations to implement the requirements of the TCPA. 47 U.S.C. § 227(b)(2).

8.      The TCPA regulates the use of automated telephone equipment, also known as Automated Telephone Dialing Systems (ATDS), autodialers or robodialers, which have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

9.      The TCPA makes it illegal to use autodialers to place calls to a cellular phone other than for an emergency purpose or with the prior express consent of the called party.

10.     In 2003, the FCC issued a Report and Order addressing, in part, autodialed and prerecorded message calls made to cellular telephone numbers. The FCC affirmed that, with two narrow exceptions, it is unlawful to make *any call* using an automatic telephone dialing system or artificial or prerecorded message to any wireless number. The exceptions, inapplicable to the instant case, include calls made for emergency purposes and with prior express consent. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R 14014, 14115-16 (2003).

11.     With respect to autodialed debt collection calls, in a 2008 Declaratory Ruling, the FCC clarified that autodialed and prerecorded or artificial message calls to a cellular phone number by or on behalf of a creditor are permitted only if the calls are made with the prior express consent of the called party. Prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and provided during the

3

transaction that resulted in the debt owed.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 564-65 (2008).

12.    Although the collection industry has argued to the contrary, the TCPA prohibitions are not limited to telemarketing calls; debt-collection calls are covered. *Mims v Arrow Financial Services, LLC,* U.S. Supreme Court, 421 Fed. Appx. 920 (2012), *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847 (W.D. Tenn. 2010); *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 561 (2008) ("ACA Declaratory Ruling"); *Brown v. Enterprise Recovery Systems, Inc*., No. 02-11-00436-CV, 2013 WL 4506582, *5 (Tex.App. Aug. 22, 2013).

13.    A predictive dialer constitutes an automatic telephone dialing system within the meaning of the TCPA.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* F.C.C. 07-232, 23 F.C.C. R. 559, 566 ¶ 12 & 13 (Dec. 28, 2007) released Jan. 4, 2008).  In that Ruling, the Federal Communications Commission ("FCC") for a second time rejected the position that a predictive dialer only meets the definition of an ATDS when it randomly or sequentially generates numbers. Rather, it stated "In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone system and is subject to the TCPA's restrictions on the use of autodialers."  23 F.C.C. R. 559, 566 ¶ 12.  Also included in the TCPA definition, is equipment and software which automatically dials telephone numbers stored in data bases and lists.

12.    Dead air calls are the mark of predictive dialers.  As stated by the FCC, "The record before us revealed that consumers often face "dead air" calls and repeated hang-ups

resulting from the use of predictive dialers." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 Fed. Reg. 19330, 19334 (April 13, 2005).

13.    On July 10, 2015 the FCC released its written Declaratory Ruling and Order, FCC 15-72, (the "FCC Omnibus Order") in response to 21 petitions filed with the agency by various companies and trade associations seeking relief or clarification regarding the TCPA and affirmed its previous orders (2003 and 2008) holding amongst other things, that predictive dialers constituted an ATDS as defined by the TCPA.

14.    Under the MDTCPA, "A person may not violate. . . The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L)" § 14-3201 of the Commercial Law Article.

15.    For any violation of the MDTCPA, the violator is liable for "(1) Reasonable attorney fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation." Md. Code Ann., Com. Law § 14-3202(b).

16.    Plaintiff brings this lawsuit as a result of OCWEN'S illegal actions using an ATDS to call Plaintiff on his cell phone without his prior express consent within the meaning of the TCPA and the rules promulgated by the FCC.

17.    By violating the TCPA, OCWEN violated the MDTCPA as well. See Md. Code Ann., Com. Law § 14-3201(2).

**JURISDICTION AND VENUE**

18.     Jurisdiction of this Court arises under 47 U.S.C. § 227(b), 15 U.S.C. § 1692k(d),and 28 U.S.C. §§1331 and 1337.  This Court may exercise supplemental jurisdiction over the state law claims arising out of the same nucleus of operative facts.

19.     Venue is proper in this District Court because Plaintiff resides in this judicial district, the harm to Plaintiff occurred in this judicial district, and Defendant is subject to personal jurisdiction because it conducts business within the judicial district.

## PARTIES

20.     Plaintiff OSOWIECKI is an adult natural person and a resident and citizen of the State of Maryland and who is protected under the FDCPA from harassment, oppression and abuse in connection with the collection of a debt

21.     Plaintiff is a "recipient" and / or "called party" under the TCPA pursuant to 47 U.S.C. § 227, and Plaintiff is the named subscriber and user to the cellular phone service of the cell phone number involved in this suit.

22.     Plaintiff is a "consumer" and "person" as the terms are defined in the FDCPA.

23.     Defendant OCWEN is a foreign corporation doing business in Maryland.

24.     Defendant OCWEN is, based upon information and belief, a Delaware corporation with a principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

25.     OCWEN is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) as well as under state law, MD. ANN. CODE, COM. LAW § 14-201 et seq.

26.     OCWEN'S Maryland registered agent is CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, MD 21202.

27.     OCWEN is defined as "any person," prohibited from auto-dialing cellular phone devices pursuant to 47 U.S.C. § 227(b)(1)(iii).

28.     OCWEN acts as a debt collection agency in Maryland.


## FACTUAL ALLEGATIONS

29.     OSOWIECKI obtained a loan to refinance a mortgage (the "debt") from IndyMac Bank, F.S.B. on or about 03/24/2005 secured by property he owned.

30.     The debt is currently owned by Deutsche Bank National Trust Company As Trustee For IndyMac INDX Mortgage Loan Trust 2005-AR10, Mortgage Pass-Through Certificates Series 2005-AR10.

31.     In 2010, OSOWIECKI defaulted on the loan.

32.     After the debt was in default, on 12/01/2013, IndyMac Mortgage Services transferred the debt to OCWEN.

33.     OCWEN then began servicing the loan.

34.     At all relevant times, OCWEN was a debt collector as that term is defined by 15 U.S.C. §1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

35.     At all relevant times, OCWEN acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

36.     At all times relevant to this complaint OCWEN sought to collect a "consumer" debt.

37.     Plaintiff's debt arose from a transaction with a Creditor which was primarily for family, personal or household purposes to wit, a mortgage loan which meets the definition of a "debt" under 15 U.S.C. § 1692a(5) as well as under the cited state statutes.

38.    Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (443) 397-8407, and was the called party and recipient of Defendant's calls.

39.    In 2014, after it acquired the servicing rights to the debt, OCWEN commenced placing numerous telephone collection calls to Plaintiff's cellular telephone number with the use of its automated telephone dialing system (hereinafter "ATDS") in an attempt to collect the debt.

40.    At no time did Plaintiff provide his 8407 cell phone number on an application IndyMac Bank, F.S.B. or other creditor because he did not have the cell phone number at that time.

41.    At no time did Ocwen or any predecessor in interest have Plaintiff's express consent to use an automatic telephone dialing system to call him at the 8407 number.

42.    At no time did Ocwen or any predecessor in interest have Plaintiff's express consent to use an ATDS and/or artificial or prerecorded voice to call him at the 8407 number.

43.    Upon information and belief, OCWEN's calls to Plaintiff at the 8407 number were made using an Aspect dialer, which is an ATDS under the TCPA.

44.    OSOWIECKI repeatedly requested OCWEN to stop calling him on his cell phone.

45.    OSOWIECKI'S requests for OCWEN to stop calling him constituted a revocation of any consent, implied or otherwise.

46.    Despite this, OCWEN continued to call Plaintiff on his cell phone.

47.    Despite OSOWIECKI'S requests to stop, OCWEN continued calling Plaintiff with its auto dialer in an attempt to collect a debt which Plaintiff disputed owing.

48.    Each call OCWEN made to the Plaintiff's cell phone after said revocation was done so without the "express permission" of the Plaintiff and in violation of the TCPA.

49.     OCWEN'S harassing calls originated from telephone numbers including, but not limited to 800-746-2936.

50.     Plaintiff's cellular telephone number was assigned to a . . . cellular telephone service as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A).

51.     Upon information and belief, the calls from OCWEN to Plaintiff's cellular phone were made using an automatic telephone dialing system ("ATDS") which had the capability to store and dial telephone numbers in a random or sequential order without human intervention as defined by 47 U.S.C. § 227(a)(1) and/or used an artificial or prerecorded voice prohibited by 47 U.S.C. § 227(b)(1)(A).

52.     OCWEN used an automatic telephone dialing system as defined at 47 C.F.R. 64.1200(f)(1) to make the above-described calls to Plaintiff's cellular telephone with its ATDS.

53.     OCWEN made repeated automated calls to OSOWIECKI'S cell phone in violation of the TCPA's and MDTCPA's prohibitions on automated calls to cell phones.  See 47 U.S.C. 227(b).

54.     OCWEN used an artificial or prerecorded voice as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A), to leave messages on Plaintiff's cellular telephone voice mail.

55.     Plaintiff believes that Defendant's calls were placed to his cell phone with the use of an ATDS because OCWEN used artificial and pre-recorded voice messages with a high percent of the calls, which Plaintiff answered, being abandoned.

56.     On these calls Plaintiff heard clicking noises, dead air and experienced delays on his cell phone during the time that the pre-recorded message informed Plaintiff to stay on the line to get connected [with a live operator].

57.     Most of the live operators that eventually came on the line and spoke with Plaintiff had extremely thick foreign accents which made it difficult for Plaintiff to under what they were saying.

58.     None of the above-described calls made by OCWEN to Plaintiff's cellular telephone were made for emergency purposes as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A).

59.     OCWEN did not obtain Plaintiff's prior express consent as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A) to make the above-described calls to Plaintiff's cellular telephone.

60.     OCWEN did not have an established business relationship with Plaintiff as the phrase is used in the TCPA, 47 U.S.C. §227(a)(4) when OCWEN made the above-described calls to Plaintiff's cellular telephone.

61.     OCWEN is not a tax exempt nonprofit organization as the phrase is used in the TCPA, 47 U.S.C. §227(a)(4).

62.     OCWEN used an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) to make the above-described calls to Plaintiff's cellular telephone, without Plaintiff's prior express consent and for a non-emergency purpose, in violation of the TCPA, 47 U.S.C. §227(b)(1)(A)(iii) and the MDTCPA.

63.     OCWEN has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

64.    OCWEN has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or OCWEN to remove the number.

65.    OCWEN's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to OCWEN they wish for the calls to stop.

66.    OCWEN has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

67.    OCWEN has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call consumers despite consumers' requests that OCWEN stop calling.

68.    OCWEN has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant OCWEN continues to robodial consumers.

69.    OCWEN 's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

70.    OCWEN has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

71.    From each and every call placed without consent by OCWEN to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

72.    From each and every call placed by OCWEN to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from OCWEN's calls.

73.     From each and every call placed without express consent by OCWEN to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time.

74.     For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop.

75.     Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

76.     Each and every call placed without express consent by OCWEN to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff.

77.     Each and every call placed without express consent by OCWEN to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

78.     Each and every call placed without express consent by OCWEN to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy; Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, waste of Plaintiff's time, causing risk of personal injury due to distraction and trespass upon Plaintiff's chattels.

79.     All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a debt from the Plaintiff through the use of automated/predictive dialing technology.

80.     OCWEN knowingly violated the TCPA and MDTCPA.

81.     OCWEN willfully violated the TCPA and MDTCPA.

82.     A class action lawsuit based on facts similar to the above had been filed against OCWEN in the United States District Court for the Northern District of Illinois, entitled *Snyder v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-08461.

83.     Plaintiff was identified as a class member, but properly and timely opted out, thereby retaining his right to bring this suit.

84.     Plaintiff is not barred from bringing these claims set forth herein by any other prior action, settlement or other lawsuit.

### *Respondent Superior Liability*

85.     The acts and omissions of Defendant and the individual debt collectors employed as agents by Defendant, who communicated with Plaintiff as described herein, were committed within the time and scope limits of their agency relationship with their principal, OCWEN.

86.     The acts and omissions by OCWEN'S agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by OCWEN in collecting consumer debts.

87.     By committing these acts and omissions against Plaintiff, OCWEN'S agents were motivated to benefit their principal, OCWEN.

88.     OCWEN is therefore liable to Plaintiff through the Doctrine of *Respondent Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the TCPA and MDTCPA, the FDCPA and the MCDCA in OCWEN'S attempts to collect this debt from Plaintiff. OCWEN made repeated automated calls to Plaintiff's cell phone in violation of the TCPA's and MDTCPA's prohibitions on automated calls to cell phones. See 47 U.S.C. 227(b).

89.     OCWEN used an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) to make the above-described calls to Plaintiff's cellular telephone, without Plaintiff's prior express consent and for a non-emergency purpose, in violation of the TCPA, 47 U.S.C. §227(b)(1)(A)(iii) and the MDTCPA.

90.     OCWEN knowingly violated the TCPA and MDTCPA.

91.     OCWEN willfully violated the TCPA and MDTCPA.

### ***Respondent Superior Liability***

92.     The acts and omissions of OCWEN and its agents were committed within the scope of the principal-agency relationship with OCWEN.

93.     The acts and omissions by OCWEN's agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by OCWEN in collecting consumer debts.

94.     By committing these acts and omissions against Plaintiff, OCWEN's agents were motivated to benefit their principal, OCWEN.

95.     OCWEN is therefore liable to Plaintiff through the Doctrine of *Respondent Superior* for the intentional and negligent acts, errors, and omissions done in violation of

state and federal law by its collection employees and agents, including but not limited to violations of the TCPA, the MDTCPA, the FDCPA, and the MCDCA in OCWEN's attempts to collect this debt from Plaintiff.

## COUNT I

### Negligent Violation of the Telephone Communications Protection Act

96.     Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein, and further states as follows.

97.     OCWEN'S use of an automatic telephone dialing system and/or an artificial or prerecorded voice when calling Plaintiff's cellular telephone constitutes numerous and multiple negligent violations of the TCPA, 47 U.S.C. 227 *et seq.*

98.     As a result of OCWEN'S negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B). Plaintiff is also entitled to and seeks injunctive relief enjoining OCWEN from further violations of TCPA.

## COUNT II

### Willful Violation of the Telephone Communications Protection Act

99.     Plaintiff re-alleges the aforementioned paragraphs above as if fully set forth herein, and further states:

100.    OCWEN'S use of an automatic telephone dialing system and/or an artificial or prerecorded voice when calling Plaintiff's cellular telephone constitutes numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. 227 et seq.

101.    As a result of OCWEN'S knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble statutory damages, up to $1,500.00, for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

102.    Plaintiff is also entitled to and seeks injunctive relief enjoining OCWEN from further violations of TCPA.

## COUNT III

### Violations of the -
### Maryland Telephone Consumer Protection Act Md. Code Ann., Com. Law §§ 14-3201 et seq.

103.    Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein, and further states:

104.    As a result of Defendant's violations of the TCPA as described above, Defendant violated the MDTCPA, § 14-3201(2).

105.    Plaintiff may recover statutory damages of $500.00 for each and every call in violation of the statute. § 14-3202(b)(2)(i).

106.    Plaintiff is also entitled to an award of attorney fees pursuant to § 14-3202(b)(1) and costs.

## COUNT IV

### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 et Seq.

107.    Plaintiff re-alleges the aforementioned paragraphs above as if fully set forth herein, and further states:

108.    The foregoing acts and omissions of OCWEN constitute violations of the FDCPA including, but not limited to, each and every one of the below cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

    a.  § 1692d. Any conduct the natural consequence of which is to harass, oppress, or abuse any person.

    b.  § 1692d(5). Caused the phone to ring or engaged any person in telephone conversations repeatedly.

109.    As a result of OCWEN'S violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 each pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT V**

**Violations of the Maryland Consumer Debt Collection Act**
**MD. ANN. CODE, COM. LAW  § 14-201 et seq.**

110.    Plaintiff re-alleges the aforementioned paragraphs above as if fully set forth herein, and further states:

111.    The foregoing acts and omissions of OCWEN constitute violations of the MCDCA including, but not limited to, each and every one of the below cited provisions of the MCDCA, § 14-202:

    (6) Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can  be expected to abuse or harass the debtor.

112.    Pursuant to § 14-203 of the MCDCA, "[a] collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

113.    As a result of OCWEN'S violations of the MCDCA, Plaintiff is entitled to damages and reasonable attorney's fees and costs.

**Demand for Jury Trial**

Plaintiff demands trial by jury in this action.

## DEMAND FOR JUDGMENT FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment is entered against Defendant.


## COUNTS I & II

### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227et seq.

- For an award of actual damages pursuant to 47 U.S.C. §227 et seq.  against Defendant and for Plaintiff;

- For an award of statutory damages pursuant to 47 U.S.C. §227 et seq. against each and every Defendant and for Plaintiff;

- For an award of treble damages pursuant to 47 U.S.C. §227(b)(3);

- Declaratory and injunctive relief prohibiting Defendant from further engaging in conduct that violates TCPA;

- An award of attorneys' fees and costs; and

- Any other such relief the Court may deem proper.


## COUNT III

### Violations of the Maryland Telephone Consumer Protection Act Md. Code Ann., Com. Law §§ 14-3201 et seq.

- For an award of statutory damages of $500.00 for each and every call in violation of the statute. § 14-3202(b)(2)(i).

- For an award of attorney fees pursuant to § 14-3202(b)(1) and costs.

- Any other such relief the Court may deem proper.

## COUNT IV

**Violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.**

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- For an award of statutory damages in addition to Count II, of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against  Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff.

## COUNT V

### Violations of the Maryland Consumer Debt Collection Act
### Com. Law §§ 14-201 et seq.

- For an award of damages pursuant to § 14-203.

- For an award of attorney fees and costs pursuant to § 14-203.

- Any other such relief the Court may deem proper

*Accordingly, Plaintiff requests that the Court:*

a. Grant statutory damages;
b. Grant actual damages;
c. Grant treble damages;
d. Grant exemplary damages; and
e. Award costs and attorney fees.


Dated: March 18, 2019                         Respectfully Submitted,


                                              REX ANDERSON, PC

                                              */s/ Rex C Anderson*
                                              Rex C. Anderson (P47068)
                                              Attorney for Plaintiff
                                              9459 Lapeer Rd. Ste. 101
                                              Davison MI 48423
                                              (810) 653-3300

rex@rexandersonpc.net

*/s/ Nathan Baney*_____
Baney Law, P.C.
Nathan Baney
Attorney for Plaintiff
1997 Annapolis Exchange Parkway,
Ste 300
Annapolis, Maryland  21401
(571) 303-9102
nathan@baneylaw.com